1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11 | In re GARDEN FRESH RESTAURANTS, LLC,
12 |                                          Debtor.
13 | ————————————————————
14 | LESLIE T. GLADSTONE, ESQ.,
15 | as Chapter 7 Trustee of Garden Fresh Restaurants, LLC,
16 |                                          Plaintiff,
17 | v.
18 |
19 | TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and
20 | THE TRAVELERS LLOYDS INSURANCE COMPANY,
21 |                                          Defendants.
22 |

Case No.:  21-CV-1440 JLS (KSC)

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS; (2) ADOPTING IN PART PROPOSED ORDER; AND (3) GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE**

(ECF No. 15)

23
24       On August 30, 2021, Defendants Travelers Property Casualty Company of
25  America and The Travelers Lloyds Insurance Company (collectively, "Defendants") filed
26  a Motion to Dismiss the First Amended Complaint of Plaintiff Leslie T. Gladstone, Esq.,
27  as Chapter 7 Trustee of Garden Fresh Restaurants, LLC ("Plaintiff") in Adversary
28  Proceeding No. 21-90043, currently pending in the United States Bankruptcy Court for

1

the Southern District of California. *Gladstone v. Travelers Prop. Cas. Co. of Am.*, No. 21-90043-LT (Bankr. S.D. Cal. 2021), ECF No. 24. On January 28, 2022, the Bankruptcy Court issued a Proposed Order on Defendants' Motion to Dismiss, recommending that the District Court grant Defendants' Motion to Dismiss with prejudice. ECF No. 15-1 (the "Proposed Order"). The matter was submitted to this Court on March 24, 2022. *See generally* Docket.

Presently before the Court is the Bankruptcy Court's Proposed Order, Plaintiff's Objections ("Objs.," ECF No. 15-3), and Defendants' Reply to Plaintiff's Objections ("Reply," ECF No. 15-4). Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matters presented appropriate for resolution without oral argument. After a careful, *de novo* review of the relevant record, the Parties' submissions, and the Proposed Order, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS IN PART** the Proposed Order, and **GRANTS** Defendants' Motion to Dismiss **WITHOUT PREJUDICE**.

## BACKGROUND

### I. Procedural Background

On May 14, 2020, debtor Garden Fresh Restaurants, LLC ("Garden Fresh") commenced voluntary Chapter 7 Bankruptcy Proceeding No. 20-02477 in the United States Bankruptcy Court for the Southern District of California. *In re Garden Fresh Restaurants LLC*, Case No. 20-02477-LT, ECF No. 1. On June 7, 2021, Garden Fresh initiated Adversary Proceeding No. 21-90043 against Defendants in Bankruptcy Court. Case No. 21-90043-LT, ECF No. 1.

On June 14, 2021, Plaintiff, as the Chapter 7 Trustee of debtor Garden Fresh, filed a First Amended Complaint against Defendants. *Id.*, ECF No. 3. On August 30, 2021, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint. *Id.*, ECF No. 24. On October 4, 2021, the Bankruptcy Court determined the Adversary Proceeding was a non-core proceeding. *Id.*, ECF No. 37. On January 28, 2022, the Bankruptcy

///

///

Court issued the at-issue Proposed Order, prompting the filing of Plaintiff's Objections and Defendants' Reply.[1]

On March 24, 2022, the Bankruptcy Court transmitted its Proposed Order, Plaintiff's Objections, and Defendants' Reply to this Court for consideration.  ECF No. 15.  On April 28, 2022, Plaintiff filed a Notice of Supplemental Authority in the Adversary Proceeding.  Case No. 21-90043-LT, ECF No. 58.  On May 6 and May 11, 2022, Defendants filed a Response to Plaintiff's Notice with additional supplemental authority.  *Id.*, ECF Nos. 59 & 60.

## II.    Factual Background

### A.    *Garden Fresh's Claim for Coverage*

The Bankruptcy Court's Proposed Order contains a thorough and accurate recitation of the factual allegations in Plaintiff's First Amended Complaint.  Proposed Order at 2–7.  The Court incorporates the Proposed Order's background discussion by reference.   In short, Plaintiff's First Amended Complaint—styled as a declaratory judgment action—arises from Defendants' denial of Garden Fresh's claim for lost business income and other expenses under a commercial property insurance policy following government closure orders due to the COVID-19 pandemic.  Case No. 21-90043-LT, ECF No. 3 ¶¶ 1–7.

Prior to its bankruptcy filing, Garden Fresh operated ninety-seven restaurants, two distribution centers, and four other locations throughout the United States (hereinafter, "Insured Properties.").  *Id.* ¶¶ 17–18.  These locations were covered by a commercial insurance policy Garden Fresh purchased from Defendants for the period spanning April 1, 2019, through April 1, 2020 (hereinafter, the "Policy.").  *Id.* ¶ 2.  Under the general "Coverage" provision, the Policy provided Defendants would pay for a "direct physical loss or damage" to the Insured Properties "causing by or resulting from a

---

[1] On February 10, 2022, while briefing on the Proposed Order was still in process, this Court denied Defendants' Motion to Withdraw the Reference of the Adversary Proceeding to the Bankruptcy Court. ECF No. 14 at 3.

Covered Cause of Loss."  Case No. 21-90043-LT, ECF No. 3-2 at 14.  The "Business Income," "Extra Expense," and "Civil Authority" provisions further defined the various benefits Garden Fresh could be entitled to if the general "Coverage" provision was triggered and also set forth other requirements for coverage.  *Id.*, ECF No. 3-2 at 33–49. Finally, the "Virus Exclusion" provision removed from coverage any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* at 25, 27.

In March 2020, Garden Fresh made a claim pursuant to the Policy after state and local authorities issued orders limiting the public's access to restaurants in response to the COVID-19 pandemic.  Case No. 21-90043-LT, ECF No. 3 ¶¶ 61–95, 179.  This claim was denied by Defendants in a letter dated May 21, 2020.  *Id.* ¶¶ 180–181.  Plaintiff alleges Defendants' denial "compounded" the results of the government shutdown orders and forced Garden Fresh into bankruptcy. *Id.* ¶ 185.

In Plaintiff's First Amended Complaint, Plaintiff seeks an order declaring that: (1) Garden Fresh sustained a "direct physical loss of or damage" to property; (2) the Virus Exclusion provision of the Policy is not applicable to Garden Fresh's losses; and (3) Defendants must pay Garden Fresh "up to the limits of liability" in accordance with the Policy. *Id.* at 51.

### B.  The Bankruptcy Court's Proposed Order

In their Motion to Dismiss, Defendants argue Plaintiff failed to allege any facts plausibly supporting Garden Fresh's entitlement to coverage under the Policy.  *See* Case No. 21-90043, ECF No. 24-2.  In its Proposed Order, the Bankruptcy Court recommends Defendants' Motion to Dismiss be granted with prejudice for two reasons.  Proposed Order at 9–15.  First, the Bankruptcy Court concludes Plaintiff cannot allege Garden Fresh sustained a "direct physical loss or damage" to property because Plaintiff cannot plausibly allege that the physical presence of COVID-19 in *only* the Insured Properties "caused Garden Fresh to suspend its operations[.]" *Id.* at 12.

///

4

Instead, the Bankruptcy Court reasoned that:

> Irrespective of what the Trustee argues or pleads, common sense dictates that it was: (i) the *pandemic spread of the virus* throughout the United States—as opposed to it spreading solely in Garden Fresh's restaurants—that *triggered* the Government Orders temporarily suspending on-site dining at its restaurants; and (ii) it was the *Government Orders*—not the presumed physical presence of the virus in the air and on the property surfaces in the Garden Fresh restaurants—that *caused* Garden Fresh's loss of use of its restaurant premises and all of its economic losses.

*Id.* (emphasis in original).

Second, the Bankruptcy Court found all of Plaintiff's claims for coverage were, as a matter of law, barred by the Policy's Virus Exclusion provision. *Id.* at 13. In so doing, the Bankruptcy Court rejected Plaintiff's argument Garden Fresh's losses were caused predominantly by the United States Government's negligence and not the COVID-19 virus. *Id.* at 13–15. The Bankruptcy Court concluded this allegation was "logically implausible" because "[e]ven assuming the U.S. Government was negligent (a legal conclusion), logically its negligence was not the predominant cause of Garden Fresh's operations *without the virus* (a point that is not debatable)." *Id.* at 14 (emphasis in original).

## LEGAL STANDARD

A bankruptcy court's authority to enter final orders or judgments is governed by 28 U.S.C. § 157. Section 157 "divid[es] all matters that may be referred to the bankruptcy court into two categories: 'core' and 'non-core' proceedings." *Exec. Bens. Ins. Agency v. Arkison*, 573 U.S. 25, 33 (2014).

A bankruptcy judge "may hear and determine all cases under title 11 and all core proceedings arising under title 11." 28 U.S.C. § 157(b). A bankruptcy judge may also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). "However, because bankruptcy judges are not

Article III judges, the Constitution limits their ability to adjudicate—i.e., to render a final judgment—to issues that are at the 'core' of the bankruptcy power." *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 737 (9th Cir. 2009).[2]

In a noncore proceeding, such as this one, the bankruptcy judge "shall submit proposed findings of fact and conclusions of law to the district court[.]" 28 U.S.C. § 157(c)(1). "[A]ny final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." *Id.*; *see* Fed. R. Bank. P. 9033(d) ("The district judge shall make a *de novo* review . . . of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule."); *see Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1436 (9th Cir. 1995) ("In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master.").[3]

## ANALYSIS

This matter is one amongst a multitude of cases across the United States in which businesses have sought insurance coverage for losses sustained during the COVID-19 pandemic. As the Bankruptcy Court noted, an overwhelming majority of courts in the Ninth Circuit—and indeed throughout the nation—that have considered policy language virtually indistinguishable from that at issue here have rejected an insured's claim for coverage.

---

[2] Generally, a "core proceeding is one that invokes a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010) (internal quotation marks omitted). In contrast, a "non-core" proceeding is one that does "not depend on the Bankruptcy Court for [its] existence and [] could proceed in another court." *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). "It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core." *Exec.*, 573 U.S. at 33.

[3] The Proposed Order also contains a thorough and accurate recitation of the legal standard governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Proposed Order at 7–9. The Court incorporates said recital by reference.

In so doing, numerous courts have reasoned that neither the COVID-19 pandemic nor governmental closure orders associated with COVID-19 constitute a "direct physical loss or damage" to property.  *See, e.g.*, *Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, 517 F. Supp. 3d 981, 987–88 (N.D. Cal. 2021) ("Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute 'direct physical loss of or physical damage to' the insured property.") (collecting cases); *Park 101 LLC v. Am. Fire & Cas. Co.*, No. 20-cv-00972-AJB-BLM, 2021 U.S. Dist. LEXIS 122621, at *10 (S.D. Cal. June 29, 2021) ("A resounding majority of decisions support an insurer's position that business losses arising out of COVID-19 do not constitute as direct physical loss or damage.") (collecting cases); *Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.*, 77 Cal. App. 5th 753, 760 (2022) ("At this point, there is no real dispute.  Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic.").

In addition, the Ninth Circuit has already interpreted a Virus Exclusion provision identical to the one at issue here and construed it to preclude coverage against an insured's claims arising out of COVID-19 losses.  *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021); *see also Chattanooga Pro. Baseball LLC v. Nat'l Cas. Co.*, No. 20-17422, 2022 U.S. App. LEXIS 1426 (9th Cir. Jan. 19, 2022)[4]; *Mille Fleurs v. Nationwide Mut. Ins. Co.*, No. 21cv1096-LAB-AGS, 2022 U.S. Dist. LEXIS 51636, at *5 (S.D. Cal. Mar. 21, 2022) (insurance coverage precluded consistent with *Mudpie*); *Sutter's Place v. Zurich Am. Ins. Co.*, No. 5:20-cv-09384-EJD, 2022 U.S. Dist. LEXIS 44837, at *13 (N.D. Cal. Mar. 14, 2022) (same).

---

[4] As an unpublished Ninth Circuit decision, *Chattanooga* is not precedent, but may be considered for its persuasive value.  *See Nuh Nhuoc Loi v. Scribner*, 671 F. Supp. 2d 1189, 1201 n.10 (S.D. Cal. 2009) ("Although still not binding precedent, unpublished decisions have persuasive value and indicate how the Ninth Circuit applies binding authority.").

This rejection of an insured's claim for coverage has been repeated in numerous Circuit Courts of Appeals around the nation. *See, e.g.*, *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 460 (5th Cir. 2022) ("[Appellant's] claimed losses due to the suspension of dine-in services during the COVID-19 pandemic are not covered by the policy."); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021) ("All in all, the cause of the suspension of operations—the prohibition on in-person dining—did not arise from a physical loss of property or physical damage to it."); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 (8th Cir. 2021) ("We reject [appellant's] argument that the lost business income and the extra expense it sustained as a result of the suspension of non-emergency procedures were 'caused by direct loss to property.'"); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 U.S. App. LEXIS 26196, at *6 (11th Cir. Aug. 31, 2021) ("[W]e do not see how the presence of [viral] particles would cause physical damage or loss to the property."); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021) ("The Business Income provision unambiguously covered only losses stemming from physical alteration or tangible dispossession of property. Neither occurred here."); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 223 (2d Cir. 2021) ("Because [appellant] alleges only that it lost access to its property as a result of COVID-19 and the governmental shutdown orders, and not that it suspended operations because of physical damage to its property, we agree with the District Court that [appellant] cannot recover under either the Business Income or Extra Expense provisions.").

Against the clear weight of this binding and persuasive authority, Plaintiff raises three objections to the Bankruptcy Court's Proposed Order. First, Plaintiff contends the Bankruptcy Court made inappropriate factual determinations at the Motion to Dismiss stage. Objs. at 3–4, 15–21. Second, Plaintiff contends the Bankruptcy Court erred in failing to interpret the insurance policy as a whole or to resolve ambiguities in favor of coverage. *Id.* at 4, 21–23. Finally, Plaintiff contends the Bankruptcy Court relied on

factually dissimilar legal precedent, while ignoring cases supporting Plaintiff's position. *Id.* at 4, 23–33.

Regardless of how Plaintiff's objections are framed, the common thread is whether Plaintiff's claim for coverage is distinguishable from virtually all the decisions dismissing substantively similar lawsuits at the pleading stage.  The core issue before this Court then—as before the Bankruptcy Court—is whether Plaintiff has sufficiently pled around this unfavorable precedent.  In analyzing this issue, the Court is guided by two legal principles.  First, California state law controls this Court's interpretation of the relevant insurance policy language,[5] and, in interpreting state law, a federal court is "bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, [the court] must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015) (internal quotation marks and brackets omitted).  Second, this Court is, of course, bound by Ninth Circuit precedent. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987).

## I.     Factual Determinations

### A.     Causation

Plaintiff first contends that in reaching its conclusions, the Bankruptcy Court engaged in premature and impermissible fact finding contrary to the standards governing a Motion to Dismiss.  Objs. at 15–21.  Centrally, Plaintiff objects to the Bankruptcy Court's determinations that: (1) the pandemic spread of the virus throughout the United States—as opposed to just in the Insured Properties—triggered government closure orders; (2) Garden Fresh's losses were caused by these government orders—and not the physical presence of the virus in the Insured Properties; and (3) the United States Government's alleged negligence was not the predominant cause of Garden Fresh's losses. *Id.* at 3, 15–20.

---

[5] Although it is unclear to this Court whether the choice-of-law issue ever was raised, the Parties' papers consistently cite to California law.  Thus, the Court applies California law in interpreting the Policy.

The Court is not persuaded.  Here, the Bankruptcy Court accepted the truth of Plaintiff's allegations and made an appropriate "context-specific" determination as to whether Plaintiff had set forth a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  This determination was based on both binding and persuasive legal authority and the Bankruptcy Court's resort to its "judicial experience and common sense"—a determination expressly allowed under Supreme Court precedent.  *Id.*  Despite Plaintiff's insistence, the Court cannot—as a legal matter—discern any issues with the Bankruptcy Court's approach.

Indeed, the "factual findings" Plaintiff objects to are exactly the same types of conclusions reached by the California Court of Appeal, Fourth Appellate District, in *Inns-by-the-Sea v. California Mutual Insurance Company*, 71 Cal. App. 5th 688 (Ct. App. 2021), and the Ninth Circuit in *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, 15 F.4th 885 (9th Cir. 2021).  As the Bankruptcy Court did, this Court likewise concludes that both *Mudpie* and *Inns-by-the-Sea* are legally sound and directly on point.

Addressing Plaintiff's specific objections, Plaintiff argues the Bankruptcy Court's conclusion "the government orders were not issued in response to the virus spreading through Garden Fresh's restaurants" was incorrect.  Objs. at 17.  This mischaracterizes the Bankruptcy Court's Proposed Order.  The Bankruptcy Court found that the government closure orders were not issued *solely* as a response to the virus spreading through *just* Garden Fresh's properties.  Proposed Order at 12.  Instead, the orders were issued based on the presence of the virus in the wider community.  *Id.*  This is exactly the conclusion reached by the California Court of Appeal in *Inns-by-the-Sea.  See* 71 Cal. App. 5th at 699 ("Importantly, however, we approach our analysis mindful that, as the Orders establish, it was the presence of the virus *throughout* San Mateo and Monterey Counties—not the presence of the virus *specifically* on Inns' premises—that gave rise to the Orders, leading to Inns' suspension of operations.") (emphasis in original).

As in *Inns-by-the-Sea*, this is not a case where Plaintiff plausibly alleges it was the *target* of a specific closure order.  State and local authorities did not just close Garden

Fresh's properties. Instead, the government orders closed numerous properties across the nation. *See United Talent Agency v. Vigilant Ins. Co.*, 77 Cal. App. 5th 821, 840 (2022) ("Closure orders across the country were issued in response to the public health crisis arising from the pandemic, not as 'the direct result of' damage to property near [the insured's]."); *Baker v. Or. Mut. Ins. Co.*, No. 20-cv-05467-LB, 2021 U.S. Dist. LEXIS 58453, at *13 (N.D. Cal. Mar. 25, 2021) ("[P]laintiffs do not plausibly plead a claim for coverage of their business losses and expenses because no physical loss of or damage to the restaurant caused the suspension of their business. Instead, the losses resulted from the closure orders."), *aff'd*, No. 21-15716, 2022 U.S. App. LEXIS 6769, at *2 (9th Cir. Mar. 16, 2022); *see also Terry*, 22 F.4th at 460 ("Even if [the insured] alleges COVID-19 was present in its restaurants, the civil authority orders did not result from [the insured's] exposure to the virus.").

Plaintiff next argues the Bankruptcy Court "disregarded" the facts "by finding no causal connection" between the COVID-19 virus and Garden Fresh's required suspension of operations. Objs. at 18. Again, this argument mischaracterizes the Proposed Order. Rather than finding the absence of *any* causal connection, the Bankruptcy Court concluded Plaintiff's economic losses stemmed from a causal chain in which the COVID-19 virus "directly caused the government orders which directly caused the alleged losses." *Afm Mattress Co., LLC v. Motorists Commer. Mut. Ins. Co.*, 37 F.4th 440, 446 (7th Cir. 2022).

Again, this is the identical conclusion on causation reached by the California Court of Appeal in *Inns-by-the-Sea*. Specifically, in *Inns-by-the-Sea*, the court reasoned:

> [T]he lack of causal connection between the alleged physical presence of the virus on Inns' premises and the suspension of Inns' operations can be best understood by considering what would have taken place if Inns had thoroughly sterilized its premises to remove any trace of the virus after the Orders were issued. In that case, Inns would *still* have continued to incur a suspension of operations because the Orders would *still* have

been in effect and the normal functioning of society *still* would
have been curtailed.

71 Cal. App. 5th at 704.   The analysis in *Inns-by-the-Sea* applies squarely here, as articulated by other district courts.   *See Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. LA CV20-07132 JAK (AFMx), 2022 U.S. Dist. LEXIS 99291, at *35 (C.D. Cal. May 27, 2022) ("Plaintiff does not plausibly allege that something other than the closure orders caused its business losses."); *Madison Int'l v. Valley Forge Ins. Co.*, No. CV 21-8246-GW-KKx, 2022 U.S. Dist. LEXIS 16000, at *9 (C.D. Cal. Jan. 18, 2022) ("[A]s in *Inns*, Plaintiff was principally forced closed by the government stay-at-home orders and closure orders.   As the court in *Inns* discussed, even if Plaintiff had completely removed all physical traces of COVID-19 from its premises, it still would have had to remain closed because of the government orders.").

Finally, Plaintiff argues the Bankruptcy Court made premature factual findings on the applicability of the Virus Exclusion provision.   To the extent Plaintiff asserts that government restrictions and/or negligence—and not COVID-19—were the "efficient proximate cause" of its losses, the Ninth Circuit has rejected this argument.   In *Mudpie*, the Ninth Circuit affirmed a district court's dismissal of claims based on a Virus Exclusion provision materially indistinguishable from the one at issue here.   *See* 15 F.4th at 893–94.   As here, the plaintiff in *Mudpie* argued it was the government closure orders that "most directly caused" its injury.   *Id.* at 894.   The Ninth Circuit rejected this contention and held plaintiff had not plausibly alleged the "'efficient cause', i.e., the one that set others in motion, was anything other than the spread of the virus throughout California, or that the virus was merely a remote cause of its losses."   *Id.*

Similarly, in *Chattanooga*, the Ninth Circuit— albeit in an unpublished opinion— affirmed a district court's dismissal of a case based on an almost identically-worded Virus Exclusion provision.   2021 U.S. App. LEXIS 29632, at *4–6.   In so doing, the Ninth Circuit reasoned that, while "attendant disease, resulting pandemic, and governmental responses" may have affected plaintiff's losses, plaintiffs did not

21-CV-1440 JLS (KSC)

"plausibly allege that any of these other causes, and not the spread of the COVID-19 virus, were the 'efficient proximate cause' that set others in motion[.]" *Id.* at *5.

These same conclusions on causation have been repeated by numerous courts. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 321 (7th Cir. 2021) ("[T]here can be no honest dispute that the coronavirus was *the* reason these orders were promulgated. It was, so to speak, the prime mover.") (emphasis in original); *Kingray Inc. v. Farmers Grp. Inc.*, 523 F. Supp. 3d 1163, 1172 (C.D. Cal. 2021) ("If there were no coronavirus, there would be no Covid-19 pandemic, no Covid-19-related shutdowns, and no need for [plaintiff] to close, operate at a limited capacity, or modify the floor plan of its sports bar. This causal chain is straightforward and unbroken."); *BA LAX, LLC v. Hartford Fire Ins. Co.*, 519 F. Supp. 3d 711, 717 (C.D. Cal. 2021) ("Here, there is no genuine dispute that the activity of a virus, namely COVID-19, set government restrictions in motion, and is therefore the efficient proximate cause of Plaintiffs' claimed losses."); *Boxed Foods Co., LLC v. Cal. Capital Ins. Co.*, 497 F. Supp. 3d 516, 522 (N.D. Cal. 2020) ("The Civil Authority Orders would not exist absent the presence of COVID-19; COVID-19 is therefore the efficient proximate of Plaintiffs' losses."). Accordingly, Plaintiff's objections on these grounds are **OVERRULED**.

## B. *Regulatory Estoppel*

Plaintiff next contends the Bankruptcy Court erred by "glossing over" Plaintiff's allegations that various insurance industry trade groups—and implicitly Defendants— "deceived state regulators" in order to obtain approval to add the Virus Exclusion provision into their policies. Objs. at 20–21; Case No. 21-90043-LT, ECF No. 3 ¶¶ 133– 167. The basic premise of Plaintiff's argument is that insurers cannot say one thing to an insurance regulator and another thing to the insured.

The core legal issue before this Court is whether California courts would apply this type of "regulatory estoppel" to override the plain language of the Virus Exclusion provision. Here, the Bankruptcy Court correctly found that they would not. *See* Proposed Order at 14 (citing *French Laundry Partners, LP v. Hartford Fire Ins. Co.*, 535

F. Supp. 3d 897, 904 (N.D. Cal. 2021) ("California courts reject the regulatory estoppel doctrine.") (collecting cases)); *see also Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 545 F. Supp. 3d 820, 831 (C.D. Cal. 2021) ("California has not adopted the doctrine of regulatory estoppel.").

Plaintiff's reliance on the California Supreme Court's decision in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Association*, 55 Cal. 4th 1169 (2013), is unavailing. Contrary to Plaintiff's argument, *Riverisland* stands for the straightforward proposition that the parol evidence rule should not be used as a "shield to prevent the proof of fraud." *Id.* at 1180–82. The California Supreme Court did not adopt the doctrine of regulatory estoppel in *Riverisland*. Regardless, the propriety of using extrinsic evidence to prove fraud and the applicability of the regulatory estoppel doctrine to an otherwise unambiguous contract provision are two different things. Thus, Plaintiff's objections on these grounds are **OVERRULED**.

### C. Alternate Provisions for Coverage

Plaintiff additionally contends the Bankruptcy Court failed to address Plaintiff's claims for coverage under "alternative policy provisions." Objs. at 21. Although not exactly clear, Plaintiff appears to take issue with the Bankruptcy Court's finding the Policy's Virus Exclusion provision precluded Plaintiff from successfully claiming coverage under other provisions of the Parties' contract. *See* Proposed Order at 13. The Court finds no fault with this conclusion, and Plaintiff's argument—consisting of a single paragraph—does not coherently specify how the Bankruptcy Court erred. It is not the Court's role to make legal arguments on Plaintiff's behalf. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs."). Plaintiff's objections on these grounds are **OVERRULED**.

## II. Adherence to California Rules of Interpretation

As her second primary objection, Plaintiff contends the Bankruptcy Court failed to adhere to California's rules governing the interpretation of insurance policies in interpreting the phrase "direct physical loss or damage." Objs. at 21–23.

It is true that, under California law, courts "generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990).   As the Bankruptcy Court properly noted, however, courts also "may not 'rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.'" Proposed Order at 8 (quoting *Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 533 (1983)).   Here, the Bankruptcy Court recited and properly applied the familiar principles of contractual interpretation to the language of the Parties' Policy.

Plaintiff relies on the California Court of Appeal's decision in *Hughes v. Potomac Insurance Company*, 199 Cal. App. 2d 239 (Ct. App. 1962), to argue that "controlling case law dictates there is a physical loss or damage to property when a fortuitous event has changed the property from safe to use to too dangerous to use or has otherwise compromised the property's physical integrity."  Objs. at 21.[6]

As Defendants correctly point out, however, the Ninth Circuit has already found *Hughes* to be inapposite to cases involving COVID-19 related business interruption claims.   Specifically, in *Mudpie*, the plaintiffs argued that, under *Hughes*, a "direct physical loss of or damage to" property does not require "actual damage . . . but merely requires that the property no longer be suitable for its intended purpose."  15 F.4th at 891.

The Ninth Circuit rejected this argument, reasoning:

> First, *Hughes* did not purport to interpret a "direct physical loss" provision similar to the one at issue here.   *Hughes* concerned whether a home insurance policy's definition of "dwelling" included the ground underneath a home in addition to the structure itself.   Second, contrary to Mudpie's suggestion, *Hughes* did not imply that an insured need not show any physical change to the insured property to prove "direct

---

[6] In *Hughes*, the California Court of Appeal considered a case in which a landslide had swept away the lateral support of an insured dwelling, leaving it partially overhanging on a newly formed cliff.  199 Cal. App. 2d at 243.   The insurer argued the "dwelling" was not damaged because it was still intact.  *Id.* at 248.   The Court of Appeal disagreed, finding it was "without question" the dwelling "suffered real and severe damage when the soil beneath it slid away and left it overhanging a 30-foot cliff."  *Id.* at 249.

> physical loss."  To the contrary, the court in *Hughes* concluded that the home sustained "real and severe damage when the soil beneath it slid away and left it overhanging a 30-foot cliff" and deemed the home uninhabitable.

*Id.* (internal citations omitted).

To the extent Plaintiff contends *Mudpie* was incorrectly decided, this Court—like the Bankruptcy Court—has no authority to overrule the Ninth Circuit.  *See Zuniga*, 812 F.2d at 450.  Regardless, the Court reads *Hughes* in the same way as the Ninth Circuit, and Plaintiff has not even attempted to explain how the Ninth Circuit's reasoning was incorrect.  Accordingly, Plaintiff's objections on these grounds are **OVERRULED**.

## III.    Precedent

As her third primary objection, Plaintiff contends that the Bankruptcy Court "ignored precedent and case law" favoring Plaintiff and "relied on misstatements of California law."  Objs. at 23.  Specifically, Plaintiff contends that: (1) the Bankruptcy Court ignored "numerous similar cases" where motions to dismiss were denied; (2) the "law underpinning" the Proposed Order is distinguishable from the instant case; and (3) under well-established *Erie* principles, the Bankruptcy Court should have waited for guidance from the California Supreme Court.  *Id.* at 23–33.  The Court considers each of Plaintiff's arguments below.

### A.    Alternative Legal Authority

First, Plaintiff argues the Bankruptcy Court failed to consider cases in which courts have denied an insurer's motion to dismiss under similar circumstances.  *Id.* at 23–26.  As the Bankruptcy Court—and this Court—noted, however, an overwhelming majority of cases in the State of California, this District, the Ninth Circuit, and other Circuit Courts of Appeals around the nation have reached the same conclusion as the Bankruptcy Court on nearly identical facts.  Plaintiff's argument the Bankruptcy Court "made no mention" of cases with different outcomes is irrelevant.  It is true courts have not always arrived at the same result when deciding these issues.  Given the volume of such litigation, it is not at all surprising some courts have decided in favor of the insured.  Nevertheless, Plaintiff

16

has provided no legal authority—and this Court has found none—that entitles Plaintiff to a lengthy opinion distinguishing *each and every* case cited in her briefing.[7]   Indeed, the opposite is true.   *See Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) ("[C]ourts are not required to address every case cited by a litigant, and declining to distinguish a particular non-controlling decision can hardly constitute an abuse of discretion.");  *Apotex Inc. v. Gilead Scis., Inc.*, No. 18-cv-06475-JCS, 2019 U.S. Dist. LEXIS 96262, at *4 (N.D. Cal. June 7, 2019) ("The Court is not required to discuss every case that a party cites in support of its position.").   Plaintiff's objections on these grounds are **OVERRULED**.

### B.   *Underpinning Law*

Plaintiff next contends the Bankruptcy Court erred in following the Ninth Circuit's decision in *Mudpie* and the California Court of Appeal's decision in *Inns-by-the-Sea*. Objs. at 26–29.   In essence, Plaintiff argues *Inns-by-the-Sea* and *Mudpie* were wrongly decided due to their reliance—either directly or indirectly—on COUCH ON INSURANCE (3d ed. 2016) for the "generally recognized principle in the context of first party property insurance that mere loss of use of physical property to generate business income, without any other physical impact on the property, does not give rise to coverage for direct physical loss." *Inns-by-the-Sea*, 71 Cal. App. 5th at 705–06.   In support, Plaintiff points to a law review article examining the history of this principle.   Objs. at 27–28, 43–61.

Again, to the extent Plaintiff contends that *Mudpie* and/or *Inns-by-the Sea* were wrongly decided, this Court is not the proper forum for this challenge.   This Court has no authority to overrule the Ninth Circuit.   *See Zuniga*, 812 F.2d at 450.   As for *Inns-by-the-Sea*, a "federal court *must* follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007) (emphasis

---

[7] The Court notes that most—if not of all—of the decisions to which Plaintiff points are not binding authority and, indeed, are of limited persuasive value.   In contrast, the Bankruptcy Court did not err in adhering to the Ninth Circuit's decision in *Mudpie*, the California Court of Appeal's decision in *Inns-by-the-Sea*, and the majority position taken by a multitude of other courts throughout the United States.

added).  Here, there is no such evidence.  Rather, the opposite is true.  In a recent opinion, the California Court of Appeal, Second Appellate District, specifically declined a plaintiff's "invitation to depart from the Couch treatise and the case law that relies upon it."  *United Talent*, 77 Cal. App. at 833; *see also Rialto Pockets, Inc. v. Limited*, No. 21-55196, 2022 U.S. App. LEXIS 10699, at *3 (9th Cir. Apr. 20, 2022) (finding insured's claim for coverage to be foreclosed by *Inns-by-the-Sea*); *Baker*, 2022 U.S. App. LEXIS 6769, at *3 (same).  Plaintiff's objections on these grounds are **OVERRULED**.

Plaintiff further contends that the Ninth Circuit's decisions in *Mudpie* and *Chattanooga* and the California Court of Appeal's decision in *Inns-by-the Sea* are factually distinguishable because here Plaintiff alleged a "non-virus efficient proximate cause of loss" in the form of government negligence.  Objs. at 29–32.  As the Bankruptcy Court correctly found, however, even assuming government negligence, this negligence would not be the "efficient proximate cause" of Garden Fresh's losses, "because this negligence would not have impacted Garden Fresh's operations *without the virus*."  Proposed Order at 14 (emphasis in original).

Despite Plaintiff's arguments to the contrary, however, this is the exact argument the Ninth Circuit considered and rejected in *Chattanooga*.  2021 U.S. App. LEXIS 29632, at *5–6 ("So too for governmental inaction or actions taken in response to the virus.  [Plaintiffs] have not plausibly alleged that the need for the government to act in the first place—i.e., the context in which any alleged governmental inaction or action arose—was something other than the COVID-19 virus.").  This argument was also rejected by the Ninth Circuit in another recent unpublished decision: *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, No. 21-15258, 2022 U.S. App. LEXIS 11883 (9th Cir. May 2, 2022).  In *Palmdale*, the plaintiff alleged a "flawed public health response and government negligence allowed COVID-19 to spread" and that COVID-19 was, therefore, not the "proximate cause" of its losses.  *Id.* at *1–2.  As the Ninth Circuit noted, "it would be difficult to blame the government's response to the COVID-19 pandemic without implicating the virus itself[.]"  *Id.* at *4.  For these reasons, the Ninth

Circuit found that plaintiff could not "show that the government's response to the virus was the product of anything other than the virus." *Id.*

Although neither *Chattanooga* nor *Palmdale* are binding, the Court finds them persuasive, and thus Plaintiff's objections on these grounds are **OVERRULED**.[8]

### C.      Guidance from California Supreme Court

Finally, Plaintiff argues that under well-established *Erie* doctrine principles, the Bankruptcy Court should have awaited guidance from the California Supreme Court before issuing its decision.   Objs. at 32–33.   Plaintiff has not, however, provided any legal authority supporting a proposition that this Court—and the litigants in this case— must wait until the California Supreme Court issues a ruling on these exact issues. Regardless, this objection has been largely mooted since the filing of Plaintiff's brief.   In contending the Bankruptcy Court should have waited for guidance, Plaintiff pointed specifically to the fact that the policyholder in *Inns-by-the-Sea* had appealed the California Court of Appeal's decision to the California Supreme Court.   Objs. at 32–33. On March 9, 2022, however, the California Supreme Court rejected that petition for review.   *The Inns by the Sea v. Cal. Mut. Ins. Co.*, No. S272450, 2022 Cal. LEXIS 1412, at *1 (Mar. 9, 2022).     Plaintiff's objections on these grounds are therefore **OVERRULED AS MOOT**.

### CONCLUSION

The challenges faced by Garden Fresh and other business that have suffered financial hardships in the wake of the COVID-19 pandemic are not lost on this Court.

---

[8] Plaintiff also argues Garden Fresh had to "physically alter" its premises.   The Court agrees with the Bankruptcy Court that this claim is vague and contradicted by Plaintiff's allegations Garden Fresh closed its restaurants shortly after the government orders were issued.   Proposed Order at 13.

Regardless, the Court has doubts that an "alteration" equates to "direct physical loss or damage."   *See TP Racing LLLP v. Am. Home Assurance Co.*, No. CV-21-00118-PHX-SRB, 2021 U.S. Dist. LEXIS 202269, at *12 (D. Ariz. Oct. 13, 2021) (installation of plexiglass barriers does not equate to physical loss or damage); *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 1066, 1069 (N.D. Ill. 2021) (installing special air filters, plexiglass partitions, and protection shields at the front and bell desks, as well as installing hand sanitizers dispensers in certain areas of the hotel, does not constitute "physical loss or damage").

21-CV-1440 JLS (KSC)

Nevertheless, the issue before the Bankruptcy Court was whether Plaintiff had set forth a plausible claim for relief.  Here, the Proposed Order recommending that this Court grant Defendants' Motion to Dismiss is thorough and well-reasoned.  As countless other courts have done, this Court must honor the coverage the Parties did—and did not—provide for in their insurance contracts.

For the reasons stated above and in the Proposed Order, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS IN PART** the Proposed Order.  The Court departs from the Bankruptcy Court's Proposed Order in only one way.  While the Court doubts Plaintiff can cure the fundamental deficiencies identified above, the Court is cognizant that the "law concerning business interruption coverage linked to the COVID-19 pandemic is very much in development." *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 487 F. Supp. 3d 834, 845 (N.D. Cal. 2020).  Thus, in the interests of justice, the Court **GRANTS** Defendants' Motion to Dismiss **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.  Plaintiff will have *fourteen (14) days* from the date of this Order in which to file an Amended Complaint.  Plaintiff is **CAUTIONED** any Amended Complaint must be based on good faith allegations that sufficiently state claims on grounds that have not already been addressed and rejected in this Order.

**IT IS SO ORDERED**.

Dated:  September 20, 2022

Hon. Janis L. Sammartino
United States District Judge